William D. Bierman, Esq.
NOWELL AMOROSO KLEIN BIERMAN, P.A.
155 Polifly Road
Hackensack, New Jersey 07601
(201) 343-5001
Attorneys for Plaintiffs,
Kawasaki Kisen Kaisha, Ltd. and
Yang Ming Marine Transport Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KAWASAKI KISEN KAISHA,
LTD and YANG MING MARINE
TRANSPORT CORPORATION,

    Plaintiffs,

v.

MAHER TERMINALS, INC.,

    Defendant.

Civil Action No.

**COMPLAINT FOR DECLARATORY JUDGMENT, SPECIFIC PERFORMANCE AND BREACH OF CONTRACT**

## INTRODUCTION

Plaintiffs, Vessel-Operating Ocean Common Carriers, bring this action to compel defendant to abide by the terms of the Contract defendant has with each plaintiff. Plaintiffs require judicial intervention to prevent what will become a significant disruption to international trade, and with major monetary losses to plaintiffs as well as the local economy in the absence of such intervention.

Plaintiffs, by and through their retained counsel, by way of the Complaint against defendant state:

## JURISDICTION AND VENUE

Plaintiffs are Vessel Operating Ocean Common Carriers having a Stevedoring and Terminal Service Agreement with defendant for services at Port Elizabeth, New Jersey.

The Contract between plaintiffs and Maher Terminals, Inc. includes a venue and choice of law provision whereby the parties agree to have any dispute arising out of it to be filed in the State of New Jersey. As the dispute herein arises out of a Marine Stevedoring Contract this Court has jurisdiction pursuant to 28 USCA ¶ 1333. This Court has further diversity jurisdiction pursuant to 28 USCA ¶ 1332(a)(1) where the matter in controversy exceeds $75,000.00. The case is properly venued in the Federal District Court of New Jersey.

### I. PLAINTIFFS

1. <u>Kawasaki Kisen Kaisha Co., Ltd</u> (hereinafter referred to as "K" Line)

"K" Line is a Vessel Operating Ocean Common Carrier, FMC Organization No. 001466, with principal offices at 14th floor, Iino Building, 1-1 Uchisaiwaicho - Z – Chome, Chiyoda – ku, Tokyo, Japan.

2. <u>Yang Ming Marine Transport Corporation</u> (hereinafter referred to as "Yang Ming") Yang Ming is a Vessel Operating Ocean Common Carrier, FMC Organization No.000138 with principal offices at 271 Ming De 1st Road, Chidu District, Keelung 20646, Taiwan (R.O.C.)

### II. DEFENDANT

3. <u>Maher Terminals, Inc.</u> (hereinafter referred to as "Maher")

Maher, as a Lessee of Port facilities in Elizabeth New Jersey, provides stevedoring and terminal services to Ocean Common Carriers at its facility with offices at 1210 Corbin Street, Elizabeth, New Jersey.

### III. FACTS COMMON TO ALL COUNTS

4. On or about August 28, 2009, both plaintiffs executed a Stevedoring and Terminal Services Agreement with defendant ("Contract" annexed hereto as Exhibit 1).

5. By Section 17 of the Contract, the term is for a period of five (5) years, beginning January 1, 2010 and expiring December 31, 2014, with two (2) options to extend its term of two (2) and three (3) years respectively.

6. By Section 19 of the Contract the parties agreed that any amendment, modification or supplementation thereof must be by "mutual consent expressed in writing" by the parties.

7. On January 1, 2010, each plaintiff undertook to comply with the terms of the Contract with defendant.

8. No plaintiff has been in default or has otherwise breached the Contract with plaintiff.

9. No provision in the Contract provides for, or allows for, defendant to suspend, interrupt or to terminate terminal services for non-payment of charges other than those specified in the Contract, nor to act as a collection or enforcement agent for any third party as against plaintiffs.

10. On or about February 2011, over a year after plaintiff's Contract with defendant became effective, the Port Authority of New York and New Jersey ("Port Authority") purported to impose, by Tariff, a charge (Container Facility Charge, or "CFC") on ocean common carriers whose container ships load or discharge in the Port, including plaintiffs, but its Tariff did not provide for the Port Authority to collect the charge.

11. The Port Authority by Tariff also directed defendant Maher to collect the charges and to deny terminal services to any such ocean common carrier that does not pay the Port Authority's CFC charges for two (2) consecutive billing periods (totaling 60 days).

12. Defendant Maher, has informed plaintiffs that, if either plaintiff fails to pay the Port Authority's charges for two (2) billing periods, it will deny terminal services to such party.

13. Denial of terminal services by Maher for non-payment of any Port Authority charge is not authorized or allowable by any term of the Contract defendant has with plaintiffs, and Maher is in anticipatory breach of its Contract by asserting its intent to deny terminal services for nonpayment of the Port Authority CFC charge.

14. Denial of terminal services by Maher would cause extraordinary damage to plaintiffs and would cause major disruption in service to all customers for whom plaintiffs receive or deliver goods via the Port of New York/New Jersey.

15. Denial of terminal services by Maher would also cause significant financial harm to two other ocean common carriers with whom plaintiffs have an agreement for cross-chartering of container slots on their respective vessels and irrevocable harm to those carriers' customers by disruption of those other carriers' services. Harm to the flow of U.S. commerce via the Port of New York/New Jersey would be extremely serious.

16. International ocean carriage by container vessel operators such as plaintiffs is very complex, requiring long-term planning of services and intricate coordination among the plaintiffs and the two other carriers with whom plaintiffs cooperate in their container operations. Plaintiffs and the other two cooperating carriers move thousands of 20 and 40 foot ocean containers through Maher's terminal annually, mostly under annual or multi-year contracts with customers.

17. The announced intention of Maher to breach its Contract by denying terminal services at its terminal has caused plaintiffs damaging uncertainty. To stop the continuing financial loss in paying Maher over a million dollars annually in CFC charges, plaintiffs would be required to abandon their services to Port Elizabeth. This adjustment would itself incur huge expenses, including payments to the New York Shipping Association triggered by termination of the services. While stopping service may be possible, it would not be practicable. and such change would cause massive disruption to the four carriers' services and harm to their customers who depend on service to the Port for delivery of their cargoes to and from the large area to which the Port is naturally tributary.

## COUNT ONE
## DECLARATORY JUDGMENT

18. Defendant has advised that it intends to deny plaintiffs terminal services it is obligated to perform, in the event plaintiffs do not pay the Port Authority CFC charges. The parties' interests are adverse and severe and substantial harm will result if declaratory judgment is not entered.

19. Plaintiffs have a contractual "slot charter" relationship with other ocean common carriers, including COSCO Container Lines Co., Ltd. and Hanjin Shipping Company, Ltd. which requires long-term planning and significant investments. The four carriers engage in detailed coordination of vessel operations which are intergral to their service to customers and all make their respective vessels call the port for loading and discharging of containers.

20. If defendant were to deny plaintiffs terminal services, loading and delivery of imports and exports by these Ocean Common Carriers and their cooperating slot charterers would cease at the Port, at significant cost to all parties, and to the regional economy.

21. Any denial of terminal services by defendant will result in expenses in the millions of dollars to plaintiffs, their cooperating slot charterers, and their respective customers.

22. This action for Declaratory Judgment is filed to settle and clarify the plaintiffs' rights under the Contract.

23. This action is further brought pursuant to Federal Rules Civ. Pro. 57 and 28 USCA ¶ 2201.

24. There exists a genuine controversy between the parties herein that requires a ruling to settle the legal rights of all the parties. Plaintiffs will suffer severe and substantial hardship if declaratory judgment is not granted in their favor.

25. The defendant will not suffer any hardship by being required to continue providing terminal services as required under its Contract.

WHEREFORE, plaintiffs demand judgment against defendant declaring the Contract between the parties does not permit defendant's denial of terminal services to plaintiffs for non-payment of the CFC charges, and an Order enjoining defendant from denying terminal services to plaintiffs other than for non-payment for services specified in the Contract, together with costs and any other relief this Court deems just.

## COUNT TWO
## SPECIFIC PERFORMANCE

26. Plaintiffs repeat the allegations set forth in paragraphs 1-25 above and incorporate same herein as though set forth at length.

27. The executed Contract between the parties is valid and enforceable.

28. The terms of this Contract are clear that no provision thereunder accords defendant the right to deny terminal services to plaintiffs for non-payment of CFC charges.

29. Plaintiffs are not in default or breach of any part of the Contract with defendant.

30. Enforcement of the Contract would only require defendant to comply with contractually agreed upon terms, and would be neither harsh nor costly to defendant.

WHEREFORE, plaintiffs demand judgment against defendant declaring the Contract between the parties does not permit defendant the right to deny terminal services to plaintiffs for failure to pay CFC or any other charges not specified in the Contract, and for an Order enjoining defendant from denying terminal services to plaintiffs, together with costs and any other relief this Court deems just.

## COUNT THREE
## ANTICIPATORY BREACH

31. Plaintiffs repeat all the allegations as set forth in paragraphs 1-30 above and incorporate same herein as though set forth at length.

32. Maher, by its definite and unconditional declaration, has evinced its intent to deny terminal services to plaintiffs at its terminals for non-payment of CFC charges, an action which is not justified by any provision of its Contract with plaintiffs.

33. By its own declaration, Maher has expressed that it will not render the performance guaranteed in the Contract it has executed with plaintiffs.

34. Defendant's anticipated breach of the Contract will cause significant damage to plaintiffs, the local economy as well as the flow of United States export and import commerce.

WHEREFORE, plaintiffs demand judgment against defendant declaring the Contract between the parties does not permit defendant's denial of terminal services to plaintiffs other than for defaults in payments plaintiffs are obligated to make by the Contract and request an

Order enjoining defendant from denying terminal services to plaintiffs, together with costs and any other relief this Court deems just.

                                NOWELL AMOROSO KLEIN BIERMAN, P.A.

By:    /s/ William D. Bierman
           William D. Bierman
           155 Polifly Road
           Hackensack, New Jersey 07601
           (201) 343-5001

           Attorneys for Plaintiffs,
           Kawasaki Kisen Kaisha, Ltd. and
           Yang Ming Marine Transport Corporation

Dated: October 2, 2012